[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR MODIFICATION OF JUDGMENT PLEADING (# 201)
The court has before it the defendant Kenneth W. McKinney's motion of modification for judgment. He has expressly set forth in the motion for modification that he seeks to modify the judgment entered on November 1, 1979 on the basis of paragraph 13.4 of the separation agreement between the parties and the judgment of the court. The provision concerning paragraph 5 of said motion was withdrawn in open court by the attorney for the defendant, subject to the orders in this case on this motion.
The defendant has expressly not proceeded under 46b-86b both in his argument and by legal effect. The statute has not been complied with in that, the statute was not specifically invoked and the statute provides that it must be claimed in a written motion. See Connolly v. Connolly,191 Conn. 468 (1983).
It is clear that the burden of proof is on .he moving party. Substantially, the elements that the husband has to prove are as follows: CT Page 8512
1. that the wife cohabited;
2. with a person of the opposite sex;
3. for a continuous period of at least six months;
 4. has lived with such man openly and notoriously, whether or not they are husband and wife; and,
 5. the court shall exercise its equitable jurisdiction in making a determination.
During oral argument, the attorney for the husband conceded that this provision does not prohibit the wife from dating. The daughter was called as a witness, and she is Ms. McCann. She testified to the fact that she did not see her mother often, in fact sees her infrequently. She knows she lives with a Henry Lange. In December, 1990, her mother arrived at the baptism of her daughter's son with Mr. Lange. In May of 1991, the daughter visited her mother at the apartment and Mr. Lange was also an occupant there. The sleeping arrangements, as the daughter testified to them, were somewhat ambiguous and contradicted by Mrs. McKinney. Mrs. McKinney said that two nights she slept in the same bed with Mr. Lange in the bedroom with him, while the other nights she slept in another room and that they did not have sex during that time.
Also in May of 1990, at her other daughter's wedding the mother appeared with Mr. Lange. There was conflict between she and her mother concerning the sister's wedding. The daughter was not sure when Mr. Lange and her mother arrived, or at the wedding if they stayed together. The mother said they did not stay together. The daughter testified that they danced at the wedding together.
What is clear is that during the time that the daughter and the mother were together in Florida with her child, that Mr. Lange did not participate in the activities. He went his own separate way. There was no testimony that they held themselves out to be husband and wife, and in fact it appears that during the stay in Florida it was more mother and daughter and grandchild than Mr. Lange.
The wife testified that she was living in Florida since January 23rd of 1989 and had been living with Mr. Lange since that time. She testified that she had sex two times in the last six months with him; that she moved there in January, 1989 contemplating marrying this man on February 14, 1989. She CT Page 8513 started making wedding plans. She found Mr. Lange's personality to be belligerent when she arrived in Florida, not fighting, but in the language. It made her feel doubtful about the relationship. She decided not to be married because of the relationship.
They are presently, she claims, friends.
She did not go back to Texas because of the fact that there was no job and she was getting her education taken care of in Florida. She pays rent when she can. She is still a resident of Texas in that it is her permanent address and that is the address she gave when she took the stand. She still has a Texas driver's license. She is still registered to vote in Texas.
She stated that when her daughter visited her in Florida, she slept in another room except for two nights together with Mr. Lange. She does not do his cleaning, cooking, and shopping. He does his own, cleaning, cooking, and shopping. He lives in a separate bedroom from where she lives. She lives in what the daughter described as the den which has a couch in it which she pulls out every night and sleeps in there. They do not eat meals together except occasionally on Sunday and on Friday night when they generally go out for a salad together. They do not entertain together. He has his own friends over and entertains business associates and his friends. They have attended four social functions since January 23rd of 1989 together. They do not hold themselves out to be husband and wife. They do not celebrate holidays together and he entertains socially without her. He travels at least 50 percent of the time. She cannot afford to go anywhere else because oe of the economics.
They have never been continuously together for six months at any time. She has dated others during this time, including a Buck Penrose who she dated on August 16, of 1991 who lives in Stamford. She plans, after she completes her studies, to go back to Texas. She shares no interest in Mr. Lange. Lange pays none of her weekly bills. He did lend her some money for tuition and taxes. They executed a loan agreement dated August 30th of 1990 and introduced this loan as Exhibit B showing that she owes the money.
A review of her current financial affidavit shows that she is presently not making ends meet. Her expenses of $667.00 a week exceed her total weekly net income of $428.00 which amount includes the alimony payment made by the husband. A comparison of her financial affidavit of August 6th, of 1991 introduced as Plaintiff's Exhibit C and her affidavit at the time of the dissolution shows that she is in far worse CT Page 8514 financial condition now than she was then. A comparison of the husband's affidavit, on the other hand, shows that he was making about $46,500.00 gross at the time of the divorce in 1979 and is presently making $90,480.00 gross. He is remarried and his present wife makes about $3,000.00 per month and she makes no contribution towards the expenses of the house.
The husband would have this court believe that the provisions of 13.4 of the judgment and the agreement have been satisfied so that termination should take place. Counsel indicated that they were looking for termination not modification or suspension.
The agreement entered into by and between the parties does not define the terms that are essential. The court has had to seek cases outside of the agreement and finds that they clearly did not cohabit openly and notoriously as defined by the cases which have been set forth in the husband's attorney's brief. Also, the court does not find that the husband has proven a continuous relationship of cohabition. Merely living together under the circumstances described by the wife is not cohabition under the cases cited by the husband.
The court is further called on (para. 13.4) to consider the surrounding circumstances relative to such cohabitation and shall exercise its equitable jurisdiction. The court finds that the financial relationships of the parties is relevant in its determination and finds that it would be inequitable under all the circumstances to terminate the wife's alimony. For all the foregoing reason, the motion to modify is denied.
EDWARD R. KARAZIN, JR., JUDGE.